UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gustavo Tapia,

    Plaintiff,

v.

City of Pontiac, a municipal corporation,
Pontiac Police Officer Ruben Garcia, in his
individual and official capacities, Pontiac
Police Officer Sennel Threlkeld, in his
individual and official capacities, jointly
and severally,

    Defendants.
_____/

Case No. 12-10511

Honorable Nancy G. Edmunds

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. 20, 21]

The motions for summary judgment before the Court pertain to a civil rights action brought by Plaintiff, Gustavo Tapia, under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the U.S. Constitution. Plaintiff alleges the excessive use of force by Pontiac Police Officers Ruben Garcia and Sennel Threlkeld, Defendants. Plaintiff also alleges the City of Pontiac, Defendant, has demonstrated a deliberate indifference to his constitutional rights, and those of the public in general, such that the City of Pontiac was the driving force behind his injuries. For the reasons set for below, Defendants' motions are GRANTED IN PART and DENIED IN PART.[1]

---

[1] The papers submitted by both sides refer to Plaintiff's state law claims in addition to his § 1983 claims. The Court dismissed all state law claims in this case in an Order entered February 16, 2012. Those claims remain dismissed, and will not be addressed any further.

**I.  FACTS**

On October 31, 2010 shortly before 2:00am, Plaintiff, along with a group of friends including his girlfriend, Martika Rodriguez, and his sister, Beatriz Tapia were exiting Clutch Cargo's nightclub in Pontiac, Michigan. Pl.'s Resp. to Defs.' 1st Mot. Summ. J., Ex. 1, G. Tapia Dep. at 51-52, 57, 62 [Dkt. 22]. The circumstances of Plaintiff's egress that evening are somewhat muddled. All are in agreement that there was a melee inside the club, wherein the club's security team maced many club-goers, including Ms. Rodriguez. *Id.* at 72-76. Ms. Rodriguez was maced directly in the face. Defs.' 1st Mot. Summ. J., Ex. 5, Rodriguez Dep. 17-18 [Dkt. 20]. Plaintiff and most of his group then left the club. G. Tapia Dep. at 72-76.

Once outside the club, the parties disagree on the facts leading up to Plaintiff's being placed in the back of a Pontiac City Police Department cruiser. Defendant Garcia alleges that the audio/video recording equipment on the police car he was driving on the night in question was not working. Pl.'s Resp. to Defs.' 1st Mot. Summ. J., Ex. 4, Garcia Dep. at 45 [Dkt. 22]. After Plaintiff was placed in the police car, he was taken to the Pontiac Police Department where he was booked and held until Monday, November 1, 2010. G. Tapia Dep. at 45 [Dkt 22]. On January 20, 2011, Plaintiff pleaded guilty to assaulting or resisting a police officer and on February 24, 2011, he was sentenced to six months of probation and was fined $620.00. Defs.' 1st Mot. Summ. J., Ex. 10, Judgment of Sentence [Dkt. 20].

**A. Defendants' Version of Events**

The police were called to Clutch Cargo's nightclub because of a disorderly person in the parking lot. Defs.' 1st Mot. Summ. J., Ex. 3, Report of Ofc. Garcia [Dkt. 20]. Upon arrival, Defendant Garcia was unable to locate the disorderly person, but was hailed by the

club's security team, who advised him that Ms. Rodriguez and Plaintiff were kicking parked cars. *Id.*

Defendant Garcia states that Plaintiff and Ms. Rodriguez were walking away from him when he arrived on the scene. Defs.' 1st Mot. Summ. J., Ex. 4, Garcia Dep. at 52 [Dkt. 20]. Defendant Garcia also states that Ms. Rodriguez attacked him after he announced himself and commanded Plaintiff and Ms. Rodriguez to stop walking. *Id.* Defendant Garcia further contends that, after neutralizing Ms. Rodriguez, he blocked an attempted punch from Plaintiff, and then punched Plaintiff two times in the head or face, put Plaintiff in a headlock, punched him one more time in the head, and knocked Plaintiff to the ground. *Id.* at 54-62. Plaintiff then lay on the ground face down, at which point he was handcuffed - it is unclear by whom - and, in less than one minute, picked up off the ground by Defendant Threlkeld and placed in the back of a police car for transport to the police station. *Id.* at 62. Defendant Garcia broke his hand during these events. *Id.* at 65.

Defendant Threlkeld corroborates the portions of the events described above as far as stating that he picked Plaintiff up off of the ground and took him to a police car. Defs.' 1st Mot. Summ. J., Ex. 8, Threlkeld Dep. at 25 [Dkt. 21]. Defendant Threlkeld also notes that Defendant Garcia complained about his hand. *Id.* at 27.

**B. Plaintiff's Version of Events**

Plaintiff claims that he was walking with Ms. Rodriguez to their friend's car to wait for the rest of their group. G. Tapia Dep. at 77-78 [Dkt. 22]. Ms. Rodriguez was holding her hands to her face because she was still in pain from being maced. Pl.'s Resp. to Defs.' 1st Mot. Summ. J., Ex. 2, Rodriguez Dep. at 34 [Dkt. 22]. Ms. Rodriguez was angrily yelling back towards the club's security team when the police arrived and told Ms. Rodriguez and

Plaintiff to stop walking. Rodriguez Dep. at 30-31 [Dkt. 20] Plaintiff states that he and Ms. Rodriguez did not stop walking, and that one of the police officers grabbed Ms. Rodriguez by the neck. G. Tapia Dep. at 80, 101-06 [Dkt. 22]. At this point, Plaintiff states he approached Defendant Garcia to try to separate Ms. Rodriguez from his grip. *Id.* at 109-112. Plaintiff also states that he reached out to put his hands between Defendant Garcia and Ms. Rodriguez. *Id.* Defendant Garcia then threw Ms. Rodriguez to the ground or handed Ms. Rodriguez off to another officer who subsequently threw her to the ground. *Id.* After freeing himself from Ms. Rodriguez, Defendant Garcia punched Plaintiff in the face and head, knocking him to the ground. *Id.* at 113-125. Once on the ground, Plaintiff states that he was rolled onto his stomach and his hands were cuffed behind his back. *Id.* Plaintiff states that after he was handcuffed and while he was still on the ground, Defendant Garcia punched him several times in the back of the head while addressing him in a profane and insulting manner. *Id.* at 141-143.

Plaintiff then states that, after being punched in the back of his head, but while still lying belly down on the ground, he turned his head to address his sister with regard to the beating he was suffering at the hands of the Pontiac Police Department, at which point Defendant Threlkeld approached Plaintiff and stomped on his head. *Id.* at 143, 152.

Plaintiff estimates he was lying on the ground for up to eight minutes before being picked up and placed in a police car. G. Tapia Dep. at 125 [Dkt. 22].

Plaintiff also notes that he has a heart condition due to a birth defect and as a result, he does not drink alcohol on a regular basis. *Id.* at 57.

Plaintiff's sister, Beatriz Tapia, states that she saw Defendant Garcia knock Plaintiff to the ground with several fast punches to the face and head, and that she watched as

4

Defendant Threlkeld approached Plaintiff and stomped on Plaintiff's head. Pl.'s Resp. to Defs.' 1st Mot. Summ. J., Ex. 3, B. Tapia Dep. at 91-96 [Dkt. 22].

Ms. Tapia also notes that Plaintiff has had multiple procedures for his heart condition, including the implantation of arterial stents, and that because of his heart condition, he does not drink alcohol on a regular basis nor does he engage in overly strenuous physical activity. *Id.* at 31-33.

Ms. Tapia took photographs of Plaintiff's injuries on November 1, 2010, the day Plaintiff was released from jail. B. Tapia Dep. at 38-39 [Dkt. 22]; Pl.'s Resp. to Defs.' 1st Mot. Summ. J., Ex. 7 [Dkt.22].

**C. Facts Relating to The City Of Pontiac's Policies and Procedures**

The Pontiac Police Department (the "Department"), according to the deposition testimony of Lieutenant Wendy Reyes, has a comprehensive training program for new police officers. Defs.' 2d Mot. Summ. J., Ex. 1, Reyes Dep at 12-21 [Dkt. 26]. The Department also has a multi-tier disciplinary system in place designed to ensure complaints against officers, whether from the public or from within the Department, are brought to the attention of the appropriate officials, with more serious complaints brought to more senior police department officials. *Id.* 27-43.

Plaintiff has submitted evidence of two disciplinary actions taken against Defendant Garcia. The first involves allegations of off-duty alcohol abuse and the theft of a cell phone in 2007. Pl.'s Resp. to Defs.' 2d Mot. Summ. J., Ex.1-3 [Dkt.26]. Defendant Garcia denies that he stole a cell phone, but admits that he was extremely drunk. Pl.'s Ex. 1, Garcia Dep. at 18-19 [Dkt. 26]. Defendant Garcia also claims that his supervisor at the time suggested he pay off the accuser to make the problem "go away." *Id.* at 19-20. Defendant Garcia was

5

directed to complete an alcohol abuse treatment program and received a written reprimand. Pl.'s Ex. 2, Pontiac Police Dept. Report, November 7, 2007 [Dkt. 26]. The second incident involves Defendant Garcia's failure to properly question a witness/victim at the scene of a car accident in 2008. Pl.'s Resp. to Defs.' 2d Mot. Summ. J., Ex. 4, Pontiac Police Dept. Report, July 6, 2008 [Dkt. 26]. An internal investigation suggested Defendant Garcia receive a written reprimand. Pl.'s Resp. to Defs.' 2d Mot. Summ. J., Ex. 5, City of Pontiac, Official Memo., December 11, 2009 [Dkt. 26].

### D. Procedural History

Plaintiff filed his complaint on February 6, 2012. After several extensions of time and the conducting of discovery proceedings, Defendants filed two separate motions for summary judgment on November 16, 2012. One motion deals exclusively with the issues pertinent to Defendant City of Pontiac [Dkt. 21], and the other motion deals exclusively with issues pertinent to the individual police officer defendants [Dkt. 20]. Plaintiff filed separate responses to each motion. [Dkt. 22, 26].

## II. Analysis

### A. The Standard on Motion for Summary Judgment

The standard by which a district court must review a motion for summary judgment is well established. The Sixth Circuit Court of Appeals recently summarized the familiar standard as follows:

> A court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In making this determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. The ultimate inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6

> But the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. The substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted).

In this case, as in any case where the evidence before a court amounts to not much more than conflicting accounts of a series of events provided by the parties themselves, it is important to keep in mind that at the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. The Individual Police Officer Defendants**

### I. Defendants are entitled to summary judgement on the issue of Plaintiff's Fourteenth Amendment Claim

There is no dispute that Plaintiff alleges that Defendants used excessive force during a seizure. The Supreme Court and the Sixth Circuit have both directly addressed this specific issue, leaving no doubt that Plaintiff's allegations fall squarely within the framework of the Fourth Amendment.

On this point, the Supreme Court has held that a "free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [the] person...[is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

The Sixth Circuit has noted that a claim under 42 U.S.C. § 1983 for injuries suffered by the target of a police seizure is ordinarily "assessed under Fourth Amendment 'objective reasonableness' standards." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000). In *Claybrook*, the Sixth Circuit goes on to say that, in the context of an attempted seizure, the Fourteenth Amendment is *only* relevant to the claims of a third party not targeted for seizure, but who nonetheless suffers an injury in the course of the seizure. *Id.*

In response to Defendants' motion, Plaintiff has not put forth any arguments in support of his Fourteenth Amendment claim. Furthermore, the evidence provided by both parties, in the light most favorable to Plaintiff, tends to show that Plaintiff was the target of a Fourth Amendment seizure when the events in question transpired. Specifically, Plaintiff became the target of a seizure, and indeed, was seized in Fourth Amendment terms the moment Defendant Garcia knocked him to the ground, if not before that moment. *Slusher v. Carson*, 540 F.3d 449, 454-55 (6th Cir.2008) (reviewing Supreme Court precedent on what constitutes a "seizure" under the Fourth Amendment, and concluding that an officer merely grasping the wrist of an individual rises to the level of "seizure").

As noted above, under current Supreme Court and Sixth Circuit jurisprudence, the Fourth Amendment is the exclusive lens through which an unreasonable seizure is analyzed, and because Plaintiff alleges just that, it is the Fourth and not the Fourteenth Amendment through which his claims will be heard. Therefore, Defendants' motion for summary judgment is GRANTED insofar as it requests dismissal of Plaintiff's Fourteenth Amendment claim.

### ii. Defendants' request for dismissal of the claims against Officer Threlkeld for lack of admissible evidence is denied

Defendants argue that because Plaintiff cannot demonstrate personal knowledge as to unlawful conduct by Defendant Threlkeld, Defendant Threlkeld should be dismissed from the case. Defendants go on to suggest that Plaintiff has admitted "to having neither personal knowledge nor other evidence to support his claim." Defs.' 1st Mot. Summ. J. at 6 [Dkt. 20]. Defendants' argument ignores relevant deposition testimony. While the quality of Plaintiff's personal knowledge of Defendant Threlkeld's actions may be questionable, the record before the Court is not.

Defendant points to *Wysong v. City of Heath*, 260 F. App'x 848, 857 (6th Cir. 2008), for the proposition that the court need not take "a naked assertion in a litigation document as establishing a "fact" when [a plaintiff] admits to having neither personal knowledge nor other evidence to support his claim." *Wysong*, however, goes on to note that in cases where, at the summary judgment stage, a plaintiff can support his claims with evidence such as the testimony of a single eyewitness, there is sufficient evidence to "create[] a fact question for the jury." *Id.*

Under the Federal Rules of Civil Procedure, in the face of a motion for summary judgment, the non-movant may point to statements alleged on the record that would be admissible at trial in one form or another, for example, deposition testimony. Fed. R. Civ. P. 56(c)(1)(a) (West 2013). Here, Plaintiff points to the deposition testimony of Ms. Tapia, in which Ms. Tapia identifies Defendant Sennel Threlkeld as the officer who stomped Plaintiff's head. B. Tapia Dep.94-96, 104-105 [Dkt. 22]. Plaintiff also points to the pictures taken of his wounds on the day he was released from police custody. Pl.'s Ex. 7 [Dkt.22].

The Court finds Defendants' arguments on this issue to be lacking, especially considering Rule 56(c)'s explicit reference to depositions as supporting evidence at

9


summary judgment. Construing the evidence – specifically the deposition testimony of Ms. Tapia, an eyewitness to the events of October 31, 2010 – in a light most favorable to Plaintiff, the Court DENIES Defendants' request to dismiss Defendant Police Officer Sennel Threlkeld from the case. *Anderson*, 477 U.S. at 255; Fed. R. Civ. P. 56(c)(1)(a).

### iii. The Individual Defendants Are Not Entitled to Qualified Immunity

Defendants invoke qualified immunity, and argue that as governmental actors, they are shielded from liability because the complained of conduct does not violate clearly established statutory or constitutional rights. Defs.' 1st Mot. Summ. J. at 6-12. Defendants further argue that even if a constitutional violation occurred, the officers' actions were objectively reasonable and that Plaintiff cannot show that the officers were plainly incompetent and knowingly broke the law. *Id.*

Once qualified immunity is invoked, the burden shifts to the plaintiff to demonstrate that the defense is not applicable. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). In order to determine whether or not qualified immunity applies in a given case, a court must employ a two-part test, however, the reviewing court has discretion to begin its inquiry with either part of the test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court will employ the traditional sequence, and first determine whether, based on the applicable law, and in the light most favorable to Plaintiff, the facts show that a constitutional violation has occurred. Then, if the Court determines a violation occurred, the Court will consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

#### 1. In the light most favorable to him, Plaintiff has established that a constitutional violation has occurred

Taking the facts as alleged by Plaintiff to be true, Plaintiff was punched and kicked by the police after he was handcuffed and lying prostrate on the ground. G. Tapia Dep. at 141-143, 152. As noted above, when the police seize a private citizen, the Fourth Amendment and all of its protections are put into play. *Claybrook*, 199 F.3d at 359. The Supreme Court has recognized that inherent in the right of the police to make arrests is the right to threaten the use of and to actually use physical force. *Graham*, 490 U.S. at 396. When a district court must determine whether the use of force was reasonable in a given scenario, *Graham* "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Furthermore, the reasonableness determination must be made from the perspective of a "reasonable officer on the scene." *Id.*

Here, Plaintiff alleges that while seized, he was subjected to violent blows to his head after he had been physically restrained. While it may be true that Defendant Garcia was responding to a perceived attack, and that attacking a police officer is a very serious crime, any threat of further harm to the police or others, not to mention the likelihood of Plaintiff attempting to flee, was extinguished once Plaintiff was lying face down on the ground, with his hands cuffed behind his back doing nothing more than calling out to his sister. Once so subdued, Plaintiff was at the mercy of Defendants and any further application of force at that point appears to the Court to be gratuitous and in violation of the Fourth Amendment. In other words, the Court does not believe than an "objectively reasonable officer on the scene" would have approved of the treatment Plaintiff alleges he received from Defendants Garcia and Threlkeld. In light of the foregoing, and because Plaintiff alleges that

11

Defendants continued to punch and kick him after he no longer posed any threat of violence or flight, the Court finds that Plaintiff's Fourth Amendment right to be free from unreasonable seizures was violated.

### 2. The constitutional violation involved a clearly established right

Defendants' motion only addresses the initial punches delivered by Defendant Garcia in response to Plaintiff's attempt to interfere with the police's treatment of Ms. Rodriguez. In *Wysong,* the Sixth Circuit made it clear that "the police may use force on suspects who resist arrest." 260 Fed. App'x at 854-55. In that case, the court deemed the use of force reasonable, even though the force was used against a man who was in the throes of diabetic muscle spasms, and therefore only *appeared* to be resisting arrest. *Id.* Under the *Wysong* standard, and based on Plaintiff's version of events, it is not difficult to conclude that irrespective of factual accuracy, Defendant Garcia's in-the-moment determination that Plaintiff was about to attack him was objectively reasonable, as was his initial response to that perceived attack. Furthermore, Defendant Garcia's actions that provoked Plaintiff's perceived attack, namely, grabbing Ms. Rodriguez, were based on an objectively reasonable assessment of the situation with which Defendant Garcia was confronted. Specifically, Defendant Garcia was called to the scene to address a complaint of disorderly conduct. Defs.' Ex. 3 [Dkt. 20]. What he found, according to Plaintiff, was an angry woman, clutching her face and hurling expletives at security guards, and who refused to stop walking away when ordered to do so. G. Tapia Dep. at 80 [Dkt. 22]; Rodriguez Dep. at 30-31, 34 [Dkt. 20, 22]. Under those circumstances, Defendant Garcia's decision to physically grab hold of Ms. Rodriguez was objectively reasonable.

Plaintiff points to several Sixth Circuit cases that address various instances of the excessive use of force by police during Fourth Amendment Seizures in order to demonstrate that the constitutional violation in this case involved a clearly established right. These cases are necessarily dependent on idiosyncratic fact scenarios, however, certain underlying themes can be teased out. For example, and highly relevant to this case, the employment of handcuffs or other restraints by the police seriously calls into question the reasonableness of any application of force subsequent to the implementation of the restraints. *See e.g., Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 512 (6th Cir. 2006) ("On the facts as we must take them, there was simply no governmental interest in slapping Pigram after he had been handcuffed, nor could a reasonable officer have thought there was."); *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002) ([T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir.1985) ("The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive.") (abrogated on other grounds).

Beyond denying the sufficiency of Plaintiff's evidence, Defendants fail to address the alleged punches and kick to Plaintiff's head subsequent to the application of handcuffs. Given that "[t]he substantive law will identify which facts are material," in determining whether or not a clearly established right was violated, it is the alleged blows to Plaintiff's head that occurred *after* he was subdued on which this case will turn. *Sierra Brokerage Services, Inc.*, 712 F.3d at 327; *Pigram*, 199 F. App'x at 512.

The Court's own review of the matter finds the law in the Sixth Circuit settled. The Sixth Circuit has not only repeatedly stated that "the right to be free from excessive force

is a clearly established Fourth Amendment right," it has also "consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

Viewing the facts of this case in the light most favorable to Plaintiff, Defendants Garcia and Threlkeld violated a clearly established constitutional right when they struck Plaintiff after he had been subdued. *Id.* In light of that, Defendants Garcia and Threlkeld are not entitled to qualified immunity, and Defendants' motion for summary judgment on that issue is DENIED.

**C. City of Pontiac, the Municipal Defendant**, **is entitled to summary judgment**

Plaintiff, in his complaint, alleges that the City of Pontiac ("Pontiac") has established unconstitutional practices, policies, and/or customs, and that Pontiac has engaged in deliberate indifference toward the public in general and Plaintiff particular. Plaintiff further suggests that those practices, policies, and/or customs, and deliberate indifference were a direct and proximate cause of Plaintiff's injuries. Pl.'s' Compl. at 5 [Dkt. 1].

Pontiac lays out its training and disciplinary procedures and argues that Plaintiff cannot support his claims with sufficient evidence at summary judgment. In response, Plaintiff submits five exhibits, including a portion of Defendant Garcia's deposition testimony, and four internal Pontiac Police Department documents relating to two disciplinary actions taken against Defendant Garcia over the years. Plaintiff argues that the evidence demonstrates a deliberate indifference towards the rights of the public and of Plaintiff. Plaintiff further argues that the evidence shows a failure of such magnitude on the part of the Pontiac Police Department to adequately train, supervise, and discipline

Defendant Garcia that Pontiac has "fostered and approved" of his actions. Pl.'s 2d Resp. to Defs.' Mot. Summ. J. at 6. In other words, Plaintiff's position is based entirely on a single officer's disciplinary history within the Pontiac Police Department.

Plaintiff bases his argument for municipal liability primarily on three cases. These cases, however, do Plaintiff's position no service. First, Plaintiff relies on *Swans v. City of Lansing* for the proposition that Pontiac "policy makers fostered and approved of the challenged conduct." 65 F. Supp. 2d 625, 638 (W.D. Mich.,1998). *Swans* is distinguishable on two major points. First, in *Swans* both the police chief and the city attorney testified that the challenged conduct was in fact city policy. *Id.* Second the conduct that the city fostered in *Swans* was actually the conduct challenged in court. *Id.* Here, no city officials have testified approvingly about either the conduct that is the basis of Plaintiff's lawsuit or the conduct resulting in Defendant Garcia's disciplinary record. Additionally, the "challenged conduct" here has nothing to do with Defendant Garcia's prior bad or questionable acts.

The second case Plaintiff puts forth in support of his argument for municipal liability is *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). *Harris*, it will be shown below, actually supports Defendants' position on this issue.

Third, Plaintiff points to *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985), in which the Fifth Circuit found that "[t]he disposition of the policymaker may be inferred from his conduct after the events [in question transpired]," for instance, by the presence or absence of disciplinary action. Here, Pontiac addressed Defendant Garcia's problem behavior by recommending written reprimands and requiring the completion of an alcohol abuse treatment program, but more importantly, the events for which Defendant Garcia may have been reprimanded have nothing to do with the challenged conduct, or

even constitutional rights generally. In contrast, in *Grandstaff* the inference of municipal complicity grew out of the city's failure to reprimand a group of officers for having a wild car chase and shootout across public and private property which resulted in at least one death and *which was the basis for the underlying lawsuit. Id.* On the facts before the Court, a *Grandstaff* inference is simply not called for.

Pontiac argues that it is entitled to summary judgment on the matter of municipal liability under *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). The Court agrees. In *Harris*, the Supreme Court formally adopted the "deliberate indifference" standard for establishing municipal liability under 42 U.S.C. § 1983, with an emphasis on the "failure to train" scenario. *Id.* at 398. In doing so, the *Harris* court quoted several lower courts in order to give shape to the standard. Particularly relevant here, the *Harris* court included a quote requiring "evidence at least of a pattern of similar incidents in which citizens were injured or endangered." *Id.* Plaintiff's offering of Defendant Garcia's disciplinary history would be relevant if it included any evidence of incidents similar to those at issue in this case. Defendant Garcia's dossier, instead, contains one report of less than perfect performance with regard to processing a victim/witness to a car accident, and one unsettling but nonetheless irrelevant incident of extreme off-duty inebriation. Pl.'s Ex. 1-5 [Dkt. 26]. Plaintiff's evidence on this issue in no way demonstrates a pattern of regular constitutional violations by Defendant Garcia that Defendant Pontiac ignored.

Furthermore, Pontiac points to the educational requirements and year-long probationary training period for new police officers, and its Police Department Manual as evidence of the constitutionality of its policies and practices. Specifically, during the year-long probationary period, new police officers are constantly observed by veteran officers,

and their conduct is regularly critiqued. Reyes Dep at 12-15 [Dkt. 21]. Also, the Manual, which all officers are required to be familiar with, lays out a use-of-force policy that is constitutional on its face in that it requires an "objectively reasonable" assessment of the "totality of the circumstances" prior to and during the application of force. Defs.' Mot. Summ. J., Ex. 2, Pontiac Police Dept. Manual of Procedures, 9-1.1-5 [Dkt. 21]; *Graham*, 490 U.S. at 396.

Viewed in the light most favorable to Plaintiff, the evidence before the Court on the issue of municipal liability does not create a genuine issue of material fact. Indeed, on the evidence, no reasonable jury could return a verdict for Plaintiff on this issue. Defendants' motion for summary judgment is GRANTED on the issue of municipal liability and Defendant City of Pontiac is hereby DISMISSED from these proceedings.

### III. Conclusion

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendants' motions for summary judgment. Specifically, the Court GRANTS Defendants' motion with respect to Plaintiff's Fourteenth Amendments claim, and that claim is hereby DISMISSED. The COURT also GRANTS Defendants' motion on the issue of municipal liability, and the City of Pontiac is hereby DISMISSED from these proceedings with prejudice. The Court DENIES Defendants' motion with regard to the evidence against Defendant Police Officer Sennel Threlkeld. Finally, the Court DENIES Defendants' motion on the issue of qualified immunity. As noted above in Footnote 1, Plaintiff's state law claims were dismissed by the Court in an Order entered February 16, 2012. Those claims remain dismissed, despite the fact that both parties addressed them in their summary judgment papers.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 5, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2013, by electronic and/or ordinary mail.

        s/Johnetta M. Curry-Williams
        Case Manager
        Acting in the Absence of Carol Hemeyer